Green Tree v. Christo Dulacis. May it please the Court, my name is James Messiano. I represent the appellants Nicholas and Alexandra Christo Dulacis. While our various legal arguments showing what we believe to be the several errors by the District Court are briefed in detail, and I still will address them and respond to any questions the bench may have, I first wish to state that overall the inclusion of the appellants on the theory of unjust enrichment is a shameless attempt by the appellee to locate and sue parties with deep pockets. Where it is sole, viable, and legal sufficient cause of action, in reality is against one and only one party, the defendant Olga Christo Dulacis, for one and only one claim, which is to recover on an unpaid promissory note. Didn't your clients at least receive $100,000 as a result of the fact that these mortgages had not been recorded, that the transfer had not been recorded, and she became at least $100,000? The question of whether there's more than that is more complicated, but wasn't that pretty clear? They received $106,500, yes, Your Honor, indirectly, though. The money at the second sale was placed in a— Did they have any right to that money? I don't believe they did. Why weren't they unjustly enriched then? Because that money was Olga's money on the second sale. The money—the parents— They participated in the transaction by signing over the deed. Normally they did, but— And when they signed over the deed, they had no standing or no authority to do so because they had already relinquished title. That's true. By participating and signing the deed, they enabled the daughter to get this money. It was required by the carters, the buyer's titling company, but they had no interest at the time that they transferred the deed. Why should they not be required to relinquish the $106,000? Because those funds would not—those funds were not proceeds from the sale but given to them by Olga. If Olga had— The question is whether the district court could find that this was all part of one transaction or this was a separate gift. Of course. If what had happened was that Olga got money and then, out of the goodness of her heart, she chose to give it to her parents or to anybody on the street, that would not involve them in unjust enrichment. But the question is, is there enough of a link between Olga and the parents going back to 2008 when they didn't record the change and they knew they were still on the deed so that a district court could find, maybe rightly or wrongly but within its discretion, that this was all part of one transaction? Well, Your Honor, I think—I'm presenting the standing argument I believe is my strongest argument with respect to it. But if the court puts aside the standing argument and you find unjust enrichment by my client's acts in the second matter, I think the measure of damages would be just the $106,000 that they got. That depends, one, on a complicated issue of New York law, whether if there is some wrongdoing at time two and enrichment at time one, both you can go back to time one. But that isn't completely the only thing because is there evidence of a basis of which the court could find some wrongdoing at time one in not recording these instruments? Because if it could find that, then this difficult question of New York law ain't there. Let me address that question with respect to the first sale. There was no evidence in the lower court that my clients had any—it was solely Stewart Title or their abstract company that failed to record the deed and the mortgage and my clients had no participation. And if that is so and they can prove it, they might have an action against the title. Right. And that's certainly the big thing here, the big elephant in the room, is that why didn't the appellee just go after the title company? At least we as appellants would have had equity against the title company and some counterclaim, but they didn't go after them. Why? It makes no sense to me. But in any event, the money that was paid for the payoff on the first sale, that was Olga's money. The Bank United gave Olga that money as a mortgage loan. She directed those proceeds to be paid off to my client's bank. That's a normal requirement. It's done at every closing. You have to do that. There was nothing evil, nefarious, or unjust about that. My clients gave up titles. So how can—if you let me finish—how can the damages go back five years? I mean, if you claim that the second sale is where the unjust enrichment came, if you claim that they could claw back— There's nothing nefarious in the fact that the mortgage was paid off. It was an enrichment. It doesn't make it unjust. The question of unjust enrichment is either whether unjustness, if it is there at time two, can be related back, or if there was a separate unjust act at that time, the failure to record, which put people in danger and the predecessors of opposing side, and that that unjustment was enough at that time, and that's a nice question. I think that obviously there's a quid pro quo. They gave up title, and they got their mortgage paid off. They gave up title to the house. They gave it to their daughter, and certainly they're entitled to get their mortgage paid off for giving up title. That's the exchange. So there's no unjust enrichment, in my mind, from that transaction. And, you know, if you allow to say that they can claw back that money, what's to stop similar situations where people can claw back money from banks that were paid off, depending upon a supposed unjust enrichment that occurred? It's on a case-by-case basis, and I think it's right that if there's sufficient evidence for the district court to have found it, then we really review it with great deference. Is that correct? We review that decision with great deference. Well, certainly you would review it with deference, but I think that certainly having the second sale and going back five years, damages follow the act. They don't precede an act. That's causation. And to say that you could go back five years and claim that that's the measure of damages, to me, is illogical. Thank you. You saved some time. Thank you. Good morning, Your Honors. May it please the Court. My name is Michael Cyrus. I represent the Appellee Green Tree Servicing. I just want to briefly address what might be a slight misconception regarding what was discussed about the failure to record. The recording of the 2008 mortgage indeed is not for the benefit of the appellants. It's for the benefit of the lender. The lender. The lender needs his mortgage recorded. For the appellants to assert that they somehow have been victimized by the failure to record the— Let me understand that. The question I have for you is you are not the original lender. You are somebody who bought this at a discount, presumably, because of the uncertainty of collecting, aren't you? Well, we are the holder. Yes, yes. No, I know that. But I'm just saying you bought it in a way taking a risk about whether all of this failure to record, which injured your predecessor, would come out in your favor or not, aren't you? I'm not saying that's bad. I'm just— I don't believe that's correct, Your Honor. How did Green Tree get into this? Green Tree is a servicer, and there's plenty of case law that Judge Feuerstein cited in its legion that a servicer has every right to enforce, collect— I didn't say you didn't. I just asked whether you were a servicer or you were the original party in this. The original lender was Bank United. Bank United physically—it's uncontroverted—delivered the note on April 1, 2009, to Green Tree, which made Green Tree a quote-unquote holder. You have the Court of Appeals in New York State saying many times that a holder has every right, as you pointed out, to enforce. That's not disputed. That's not disputed. I hope I've made that point clear and answered your question. Okay. How were the parents unjustly enriched in 2008? Okay. That's a very good question, and I'm glad you asked it. All right? It seems to me there are two separate issues here. Okay. When did the unjust enrichment occur, number one? And number two, what is the measure of damages? Okay. But the measure of damages was the $295,000, which was the recorded open mortgage against the property. It is unjust enrichment. So the question we're asking is how were they unjustly enriched by $2,000? The damages to your side was that. That's true. But this is an unjust enrichment action, so how were they unjustly enriched by their action? The only thing they did, potentially unjust, in 2008 was to fail to record. When you say they, who do you mean? I mean the parents. The parents have nothing to do with the recording, and as I hope I made clear to Your Honor, the recording of the deed and the mortgage was for my benefit. They took advantage. They took advantage of the failure to record. As Judge Feuerstein said, they surreptitiously, in 2013, knowing that. . . That's my point. Yes. That happened in 2013. What did they do that was unjust in 2008? Okay. All right. Number one, they participated in what they have described as a charade. That's the word they used, a charade of a sale. They said it started out as a refinance, and for whatever reason, they added Olga to title, and the three of them sold. Now, if you look at appendix, my appendix, page AA-2122, that's the HUD-1. That's a form that's given to the federal government. That is a form. . . I thought you were saying a moment ago that their inequitable conduct occurred in 2013. I think it's a continuum. I think it occurred. . . What did they do? It's a continuum. What did they do in 2008 that was . . . Wrong? Yeah. Okay. Well, first off, I think there's a misconception here. There's a Second Circuit case. What did they do wrong in 2008? That's the question. They signed a HUD-1 after telling us . . . Didn't they give up their interest in the property in 2008? They still were record owners because the deed was never recorded. That wasn't their fault. I mean, they signed over a deed to their daughter. They relinquished their interest in the property. And in return, their mortgage was satisfied. So, there was consideration. And you've acknowledged that it wasn't their fault that the deed wasn't signed. There are a couple of questions floating around. I want to get to your question about what did they do wrong in 2008. And then I'll come back to what you said. They signed a HUD . . . They told us in their brief that this was a charade. Whoever orchestrated it, who knows? Are you saying that the charade was what they did wrong? Yes or no? I mean, you keep saying charade. We keep asking, what did they do wrong? So, was it the charade or was it something else? May I, before I answer that question, say the Hoonahan case from the Second Circuit . . . I'll give you the site in a second. . . . says that for unjust enrichment to occur, there does not have to be any wrongdoing. There doesn't have to be . . . The definition, as Your Honor wrote, I have . . . The question is one of New York law. It is not one of Second Circuit law. No, I . . . So, the question I would have for you on that, which is not answering the question that the presiding judge and I have asked you, is . . . I have a New York case that says that if there was enrichment at time one and unjustness at time two, the value of damages is the enrichment at time one. And, I haven't seen a New York case that says that. If there is no New York case that says that, then I want to know what was unjust at time one. Okay. Well, okay. Let's go back to the New York cases that define unjust enrichment in which Your Honor echoed, construing New York law in Intellectual Capital Partners versus Institutional Credit Partners, 2009, Westlaw 197-4392. Unjust enrichment consists of three elements. One, I receive a benefit. Okay. Number two, it's that the defendant receives a benefit at the plaintiff's expense and it's against equity and good conscience for there not to be restitution. That's the definition under New York law, Judge Calabrese. I don't think there's any dispute about what the elements are of restitution. I think you said earlier that the cause of action accrued in 2013. Now, how do you measure the damages? I mean, how do you get to $235,000 in damages if the cause of action didn't accrue until 2013? With all due respect, I think it's $295,000 because that was the amount, $295,000. Whatever it is that the district court awarded. That was the amount because in 2008, on day one, I want to make sure, before I answer your question. Would you just keep talking? Keep talking. I'm running out of time here. I want to make it clear that if your honors are inclined to go with 2013, I want you to remember that on page, what is it? There's a check for $260,000 from the March 2013 closing payable to the appellants from that closing. He says that they only got $100,000. I know your honors mentioned that. The parents got $260,000 in 2013, and that money was apparently watered down. But the fact of the matter is they- That is not the damages that Judge Fierstein awarded. I agree with you. And that's what is before us. Okay. Will you let me finish? I'm sorry. She awarded those damages on the basis of the enrichment in 2008. The question before us is, was there enough evidence of some wrongdoing in 2008 on the basis of which Judge Fierstein's finding could be supported? Question one. Question two, if there was not, does it matter? Because you can, if there's an unjustness at time two, enrichment at time one matters. Those are the two questions. Well, in 2008, Judge Fierstein reasoned that on one day, the appellants owned a property that was underwater. That is, it was mortgaged to the extent of $295,000 to New Century. The next day, following this transaction, that mortgage was gone. $295,000 had been paid to satisfy appellants' prior obligation, enabling them five years later, which is why I say it's a continuum, enabling them five years later to sell the property for $354,000. It's as though they won the lottery. They had a house that was worth nothing in 2008. And in 2013- What's the significance of the HUD-1 form, then? Well, the HUD-1 form is significant in the sense that they represented to the federal government that this was a bona fide sale to their daughter, but yet they told us in their brief that it was a charade. Okay. Thank you. Thank you. We'll hear the rebuttal. With respect to this charade, it's not in my brief. It was in prior papers. And the reason why it was a charade, because my clients went to his predecessor bank, Bank United, which he claims he stands in their shoes in, and they went there to get a refinance. And that's why the deed was transferred to the daughter. And this was all in- Could you address whether- two questions- whether there was any evidence of wrongdoing in 2008 on the basis of which Judge Feuerstein could find unjustness then? And could you address whether, under New York law, even if there is no unjustness at time one, but an enrichment at time one, the unjustness at time two is enough to make the enrichment be that which happened at time one? Yes, Your Honor. Judge, there is no unjust enrichment at time one. As the court noted, they gave up their title. They got their mortgage paid off. With respect to the fact that there may have been- there really wasn't a misrepresentation on HUD one because the parents had given the daughter a gift in equity. Okay? The parents got their mortgage paid off. They got, I think, $45,000, and they made a gift in equity to their daughter, which added up to the, I think, $500,000 that the house has paid. So there's no charade in that regard. The charade was his client making them come to a closing, thinking that they were going to get a refinance, and instead converted the whole thing to a sale to their daughter. And that's what the charade was. Not his client, the predecessor to his client, I'm sorry, Bank United. Now, the thing is, is that- Was the bank's idea? Absolutely. The mortgage broker, you know, that's why there was this adding the daughter to the deed beforehand. Because they said there wasn't enough income, they needed somebody with better credit, and that's why they did it beforehand. My clients are unsophisticated people. They were just doing whatever. They needed money, and they were just going through the process of getting a refinance. And they were led by the mortgage broker. In 2013, they got $106,000 for the property when they had already sold it five years earlier. True? That is true.  Why did they sign the deed if they knew that they had already transferred the property five years earlier? They had no interest at that time. As I stated in my brief under Marlang's Corporation versus Lodge, once you deliver the deed, I'm sure it's first year law school stuff, once you deliver the deed to the buyer, that's it. There's delivery. They had absolutely no interest. Why did they do it? Because the daughter asked them to sign the deed because the carters needed clear title to sell the property. There's no implication whatsoever that they understood that a mortgage wasn't being paid off or anything like that. There's nothing in the record as far as that goes. Isn't that a fair inference? Sorry. Go ahead. Could Judge Feuerstein find that they signed as they did in exchange for getting the $106,000? Could she have found that way? She did find that way. And was there a situation in which it is not an abuse of discretion by a court that is the fact finder to find those facts? I think she could possibly find that the $106,000 was a measure of damages for the unjust enrichment. Yes. But, I mean, she basically in the re-argument for the interest, she says, oh, no, the interest should be from the second sale and not from the first sale, basically contradicting her initial decision, which says that the damages are from the first sale. So she contradicts her own pride decision in his request for interest. Thank you. Okay. We will reserve decision. May I make a decision regarding? No, you may not. No, no, no, no, no, no. We're done. Thank you. We'll hear the next case.